Judge Maiíshael
delivered the opinion of the Court.
At a regular term of the Fayette County Court, held on second Monday in June, 1851, by Benjamin F, Craves, wljo had been recently elected Presiding Judge thereof, the administrator of Sarah S. Cook, presented and offered to file a petition for the settlement of her' estate, as an insolvent estate. But the Presiding Judge then holding said Court as sole Judge, refused to permit the petition to be filed in said Court, on the ground that it must be filed in his “Quarterly Court-” The administrator petitioned the Circuit Court of Fayette County for a mandamus to compel B. F. Graves' to allow said petition to be filed in the Fayette County *123 Court. The response of Graves admits his refusal to allow the petition to be filed in the County Court, as proposed, and maintains that the jurisdiction of the case presented by the petition, belonged to him as Presiding Judge of the Fayette County Court, at his quarterly terms provided by law, and not to the Fayette County Court, in which the application was made. A mandamus was awarded by the Circuit Court according to the prayer of the petition; and the sole question presented by the record, is, whether the cognizance of petitions for the settlement of insolvent estates, belongs to the. Presiding Judge in the ordinary County Court, or to the same Judge in his quarterly Court.
county Court in. prior to 1851.
Prior to the passage of the act of March 11th, 1851, ‘to organize County Courts in the several counties,’ (Sess. acts, 1850-1,page 40,) the County Court, as familiarly known, was composed of three at least, and for some purposes of a majority of the Justices of the Peace commissioned for the County. These Justices had, severalh’,'jurisdiction in civil cases upon contracts not exceeding $50, and also in certain minor torts, and in certain preliminary proceedings in criminal cases; and for the exercise of their civil jurisdiction, they were required to hold regular quarterly terms or Courts. This jurisdiction may be designated as personal to each justice, and did not belong to the County Court, though composed of the Justices. But in addition 1o a very limited appellate jurisdiction in civil cases, and a very special jurisdiction of a criminal or quasi criminal character, that Court was vested with very important powers, of great interest to the community, and for the exercise of which, occasions were constantly occurring. Among these powers, were certain matters affecting the police of the county, the county revenue and its appropriation, also the establishment of roads, mills, ferries, &c., the probate of wills, the appointment of administrators and guardians, and settling with these and other officers. The present Constitution having prescribed a radical change in the organization of the Court, the de~ *124 tails of which were left to the legislation of the first General Assembly to meet after its adoption; the act¡,_ of 1851, above referred to, was intended to carry into effect the requisitions of the Constitution, on this subject.
The canstituional provision in regard to the jurisdiction of County Courts to hp regulated' by lay?.
And by the 2d section of the act oí 1851, the County Co u r t composed of Uje Presiding Judge, is to be held at the same times and places as the County Couits tlien were held, and exercise the .samo power and iurisdiction, &c. ’(except in laying county levy and expenditure oí county funds,) ds the County Courts had theie toiore exercised.
The 33d section of the 4th article of the Constitution, declares that “ the jurisdiction of the County Courts shall be regulated by law; and until chan£ shall be the same now vested ip the County Courts of this State.” The second section of the act of 1851, declare^ that a County Court, composed of the Presiding Judge, (except when the Justices pf the Peace are associate^ with him, as provided for in relation to county claims and expenditures,) shall be held a( the samé times and places as the existing County Counts are,held, and shall have the same power and jurisdiction, &c. And besides providing for the exercise of those powers by the County Court, and, identifyi.pg it in detail with the pre-existing County (Ipurt, i\ vests in (he Presiding Judge the pre-existing jurisdiction pf a Justice of the Peace, aud enlarges the same in ci vil cases from fifty up to one hundred dollars, and provides that he shall hold quarterly terms in each year; which as already stated, had been required of Justices of the Peace for the exercise of their jurisdiction in civil cases.
As the act; vests in the same officer and under the same official designation, distinct powers and jurisdiction whjch had previously belonged to two distinct and separate tribunals known by different names, it could scarcely be expected that in expressing the details necessary to be provided for, there should be perfect clearness and perspicuity. In the 16th and 17th sections of the act which' relate particularly to the settlement of insolvent estates, there are various expressions which might be applied indifferently to thé personal jurisdiction of the Presiding Judge as a Justice of the Peace, pr to his jurisdiction as the successor of the old County Court; while there áre other expressions’ which indicate that the proceeding is. to be had in the County *125 Opurt alone, anc] others again which would seem to ex¡< clude it from that tribunal. It would be a needless trouble, leading to no satisfactory conclusion, to attempt the ascertainment o.f the legislative intention by counting and weighing against each other, these apparently inconsistent expressions. If full force be given to each of' them the result of their contradiction must be uncertainty and confusion. While there should be no doubt that those who passed, and at any rate those who framed the act, had in their minds a general purpose and idea in reference, to which, the language and provisions of the act were \o them, harmonious and intelligible.
The Presiding Judge of the. County Court as Judge of the County Courtha jurisdiction lo rect the administration of insolvent estates on the petition the adhninistrator,, apd to authorize,the sale-oí, land when necessary paymeniof deblfo,
If we confine opr yiew to the 16th and 17th sections, we should not discover the general object and character of-the act, and might find the construction more and more doubtful. But upop considering the whole act, we perceive that the object was to, provide a successor to the pre-existing County Court, and to invest in that successor the powers, also of'a Justice of" the Peachy Wo perceive also that- the act gives to this newr officer in one or the other capacity,, a jurisdiction gr.qate.r tftpíi.. had belonged to either or both of" his predecessors.. His jurisdiction in ordinary civil cases,,oras a J'us%eof the.Peace, is increased from $50 to $100. His jurisdiction subject to the control of "the Cireuit Judge and the Circuit Court,'to direct-the administration of" insolvent estates on petition of," the administrator or executor, and to authorize the sale of lands, when necessary for the payment of the decedent’s debts, is as to amount of estate or indebtedness, unlimited. And the question is, in what character is he to exercise this jurisdiction?' Is it given to him as a Justice of the Peace, or as the sne-pessor of the County Cqurt and the recipient of its powers? A justice, as such, never had this power or any part of it. But the County Court not only had the power of making settlements with executors and administrators, which for many years had been exercised, through its commissioners, but by an.qct qf Mjy$h4th, *126 1S50, (Sess. acts, 1849-50, page 42,) it is provided that where the assets of an insolvent decedent’s estate do not exceed $500 by the inventory and appraisement, the executor or administrator may call all of the creditors before the commissioners to establish their claims, which shall be paid pro rata, subject to the supervision of the County Court., which is authorized to direct a sale of the decedent’s land if necessary to pay his debts.
The County -Court Judge by -the act ql }851, stands in the place of the County Court c ommissioners, under the act of 1849-50, and his powers as Judge upon the subject are co-extensive with the old County Court, which Court, if the personal as-setts do not exceed $500,might order a sale of real estate. By the 16th sec. of the act of 1851, the limit of $500 is talten off, and the County Court Judge as Judge of iheCountyCourt proper, has the jurisdiction oí settling estates and selling lands rin case of deficiency of person alty to pay debts. 'He has a separate jurisdiction as a Justice of the Peace,
Here then was substantially the same power in the County Court and its commissioners, in oases where the assetts did not exceed $500, as is given by the 16th section,'without reference to the amount of assetts.
The act of 1851, expressly puts the Presiding Judge in the place of the previous commissioners in making settlements. And it gives to the new County Court, consisting of the Presiding Judge alone, (except in the cases above designated,) the same powers that were possessed by the old. By this 2d section, the power of the former County Courts over the lands of insolvent decedents, whose personal assetts did not exceed $500, and of directing a pro rala payment of his debts, devolved upon the Presiding Judge as, and in the County Court. The 1.6th section takes off the limit, or in other words increases the jurisdiction, and prescribes the mode of notifying or calling in the creditors, and of trying or referring to the Circuit Court or its Judge, disputed questions.
There is nothing in the act which indicates an in ten-, tion to diminish the jurisdiction of the County Court, The mere doubt whether oertain expressions in the 16th and 17th sections, may not more properly refer to the Presiding Judge, acting as a Justice of the Peace, or personally, rather than to him as constituting the County Court, or acting in it, and even the certainty that, thdy are inappropriate in this last application, cannot be deemed sufficient to change the clear and necessary import of the 2d section. But that section is entitled to control the loose a,nd contradictory language of the *127 Others. Then, when the assets of an insolvent decedent , are not more than $500, the Presiding Judge would have had, under the second section, jurisdiction in the County Court, and as the successor of the former County Court, and we think it tnay be assumed with reasonable certainty, that it Vvas not intended either to take' that jurisdiction away from the County Court altogether, or to give the jurisdiction to the same officer in a different tribunal or character, when the assets exceed $500.
We might quote strong words from the 16th section, to show that the proceeding was to be in the County Court. We do not, however, deem it necessary. We are satisfied that the jurisdiction given in the case of insolvent estates, is but an enlargement of the previous jurisdiction existing in the County Courts; and that as the enlai’ged jurisdiction given to the Presiding Judge in ordinary civil cases, belongs to him as a Justice of the Peace, and is to be exercised at his quarterly Courts, so the enlarged jurisdiction over settlements and the land of insolvent decedents, belongs to him as the County Court, and is to be exercised by him in that Court.
This question, and its decision, are of importance to the public, not only from the fact'that the County Courts sit more frequently than the quarterly Courts, but also from the fact that the County Court has its clerk, and the laws provide for the careful preservation of its records, and that the proceedings under the 16th section of this act may become necessary muniments of title to real estate. These considerations are entitled to some-weight, tho’ they might not be decisive in giving construction to the statute» Nor is the suggestion to be disregarded, that the fees of the presiding Judge, and perhaps the sufficiency of his compensation, depend, to some extent, upon the question whether cases of this character are to be cognizable in the County Courts, or in his quarterly Courts, in which he is his own clerk, and entitled to fees as such» Whether, under the construction which we have adopted, the Presiding Judge *128 would be entitled to no fees except the allowance foi? making the settlement itself with the executor or administrator, is a question not presented. Whether, for the sake of giving him the fees of the entire proceeding, it should be transferred from the County Court to his quarterly Court, is a question for the Legislature, and not for this Court;
Graves for plaintiff; Harrison and Hunt for defendant.
We are of opinion that the administrator had a right to file his petition in the County Court. Wherefore, the judgment awarding the mandamus is affirmed.